ACCEPTED
01-15-00023-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
5/7/2015 10:12:26 AM
CHRISTOPHER PRINE
CLERK

No.  01-15-00023-CV

IN   THE

FIRST COURT OF APPEALS

HOUSTON, TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
5/7/2015 10:12:26 AM
CHRISTOPHER A. PRINE
Clerk

*Jeffery Dwayne Benoit,*
**Appellant**
**vs.**

*Brenda  Faye  Benoit,*
**Appellee**

**On Appeal from County Court at Law #2
of  Orange County, Texas
Cause  No. E-140,080-D**

## APPELLANT'S AMENDED BRIEF

Submitted  by:

Jack Lawrence
Attorney for Appellant
5570  Winfree
Beaumont, Texas 77705
(409) 833-0894
SBN #12043800
May 7, 2015

- **ORAL ARGUMENT CONDITIONALLY REQUESTED**  -

## IDENTITY OF PARTIES & COUNSEL

**For Appellant,**
**Jeffery Dwayne Benoit**

Jack Lawrence, Appellate Attorney
5570 Winfree
Beaumont, Texas 77705
(409) 833-0894 office
(409) 835-4567 fax
SBN #12043800

Bryan E. McEachern, Trial Atty
2905 Toccoa Road
Beaumont, Texas 77703
(409) 892-1611 (office)
(409) 242-5848 (fax)
SBN # 24043810

**For Appellee,**
**Brenda Faye Benoit**

Jamie D. Matuska, Appellate Atty
2809 Hwy 69 North
Nederland, Texas 77627
(409) 722-5600 (office)
(409) 727-1290 (fax)
SBN # 24041062

Steve Carlton, Trial Attorney
801 Henderson
Orange, Texas 77630
(409) 886-5531 (office)
(409) 886-5926 (fax)
SBN # 03818500

**County Court**
**at Law #2**

Honorable Judge Troy Johnson
County Court at Law #2
Orange County Courthouse
801 West Division Ave.
Orange, Texas 77630
(409) 670-4189

## APPELLANT'S CONDITIONAL REQUEST FOR ORAL ARGUMENT

Pursuant to Texas Rules of Appellate Procedure, Rule 39.7, Appellant hereby conditionally requests oral argument. If Appellee, or her counsel, request oral argument, then Appellant likewise requests oral argument.

# TABLE  OF  CONTENTS

**Topic**                                                                    **Page No.**

Overleaf…………………………………………………………….………….. .. .1
Identity of Parties & Counsel….………………………………………….....…2
Request for Conditional Oral Argument ....………….…………………….…...3
Table of Contents……………………….…………………………………….……4
Index of Authorities……………………………….…………….……………...8
Abbreviations Used…………………………………………………………13
Statement of the Case………………………………………….…………...15
Issues Presented……………….……………………………………………..18
Statement of Facts……………………………………………………….…...19
Summary of Argument………………………………………………….........20
Argument and Authorities....................................................................................23

**ISSUE NO. I.**  THE  TRIAL  COURT  ABUSED  ITS  DISCRETION   AS   A MATTER  OF  LAW   BY   USING  APPELLEE'S  ALLEGED  PHYSICAL DISABILITY  TO  OVERCOME  THE  TEXAS  FAMILY  CODE  #8.053 PRESUMPTION   THAT   SPOUSAL   MAINTENANCE   WAS   NOT WARRANTED………………………………………………………………..23


**ISSUE NO. II.** THE TRIAL COURT ABUSED ITS DISCRETION BECAUSE THE  EVIDENCE  WAS  LEGALLY  INSUFFICIENT  TO  REBUTT  THE TEXAS FAMILY CODE SECTION 8.053 PRESUMPTION…………………..23


**ISSUE  NO.  III.** THE  TRIAL  COURT  ABUSED  ITS  DISCRTION  BY GRANTING SPOUSAL MAINTENANCE INASMUCH AS THE EVIDENCE ADDUCED  AT  TRIAL  WAS  FACTUALLY  INSUFFICIENT  TO  REBUTT THE TEXAS FAMILY CODE SECTION 8.053 PRESUMPTION…………........23


**ISSUE NO. IV.** THE TRIAL COURT ABUSED ITS DISCRETION BY USING SPOUSAL MAINTENANCE  TO  TRY  TO CONTINUE APPELLEE IN HER FORMER  MARITAL  STANDARD  OF  LIVING,  THUS  REQUIRING REVERSAL.………….…………………………..…………..……...27

**Topic** **Page No.**

**ISSUE NO. V.** BECAUSE 'SPOUSAL MAINTENANCE CAN ONLY BE TO SUPPLY OR MEET 'REASONABLE MINIMUM NEEDS' OR NECESSARIES, THE TRIAL COURT ABUSED ITS DISCRETION BY AWARDING APPELLEE SPOUSAL MAINTENANCE AMOUNTS WHICH EXCEED HER 'MINIMUM REASONABLE NEEDS' AS OPERATIVELY DEFINED UNDER TEXAS LAW…………………………………………………..27

**ISSUE NO. VI.** THE EVIDENCE WAS FACTUALLY INSUFFICIENT TO SET SPOUSAL MAINTENANCE AT $1625 PER MONTH, WHERE APPELLEE'S MONTHLY EXPENSE SHEET CONTAINED VAGUE HEADINGS WHICH CLAIMED EXPENSES IN ROUND NUMBERS, BUT HAD NO RECEIPTS TO VERIFY THE AMOUNT CLAIMED……………... 27

    A. What constitutes 'reasonable minimum needs'?………………………... 28

**ISSUE NO. VII.** THE TRIAL COURT ABUSED ITS DISCRETION BECAUSE THE PROPERTY SETTLEMENT AGREEMENT WHICH IS INCORPORATED INTO THE FINAL DECREE IS BASED ON A RULE 11 STIPULATION MAKING IT A CONTRACT- UAL TERM OF THE DECREE, WHEREBY THE DEBT ON THE PARTIES' HOUSE, TOGETHER WITH THE HOUSE ITSELF, WAS AWARDED TO APPELLEE, AND HENCE, APPELLANT CANNOT BE ORDERED TO PAY SAID MORTGAGE DEBT AS SPOUSAL MAINTENANCE, AS WAS LATER ORDERED, THUS REQUIRING REVERSAL AND REMAND…………………………………....33

**ISSUE NO. VIII.** THE TRIAL COURT ABUSED ITS DISCRETION BECAUSE THE PROPERTY SETTLEMENT AGREEMENT WHICH IS INCORPORATED INTO THE FINAL DECREE IS BASED ON A RULE 11 STIPULATION MAKING IT A CONTRACT- UAL TERM OF THE DECREE, WHEREBY THE DEBT ON APPELLEE'S SILVERADO TRUCK, TOGETHER WITH THE TRUCK, WAS AWARDED TO APPELLEE, AND HENCE APPELLANT CANNOT BE ORDERED TO PAY SAID DEBT AS SPOUSAL MAINTENANCE AS WAS LATER ORDERED, THUS REQUIRING REVERSAL AND REMAND…………………………………....33

**Topic** **Page No.**

**ISSUE NO. IX.** THE TRIAL COURT ABUSED ITS DISCRETION BY ORDERING APPELLANT TO PAY APPELLEE'S DEBTS ON THE MAURICEVILLE RESIDENCE AND THE SILVERADO, WHERE TRIAL PROOF DID NOT OVERCOME THE FAMILY CODE SECTION 8.051 REQUIREMENT THAT SEPARATE PROPERTY WOULD NOT AVAIL TO SATISFY THESE NEEDS, THEREBY REQUIRING REVERSAL.………........33

     A. Appellee already had secured her separate property which satisfied her minimum reasonable needs for transportation and housing…………………......38

**ISSUE NO. X.** THE TRIAL COURT ABUSED ITS DISCRETION BY NOT OFFSETTING INCOME RESOURCES READILY AVAILABLE TO APPELLEE, WHERE HE IMPUTED LONG-TERM LARGE BONUSES TO APPELLANT, AND DID NOT OFFSET FACTORS LIKE APPELLANT'S HOUSING EXPENSES IN SETTING THE BASE AMOUNTS USED TO CALCULATE SPOUSAL MAINTENANCE……………………………….…40

**ISSUE NO. XI.** ALTERNATIVELY, IT VIOLATED ARTICLE I, SECTION 3a, OF THE TEXAS CONSTITUTION, TO IMPUTE INCOME TO APPELLANT, WITHOUT ALSO IMPUTING SOURCES OF INCOME ATTRIBUTABLE TO APPELLEE AT HER AGE OF 65 AND POST-DIVORCE, IN CALCULATING HER MINIMUM REASONABLE NEEDS....40

**ISSUE NO. XII.** THE TRIAL COURT ABUSED ITS DISCRETION BY AWARDING $5,000.00 IN ATTORNEY'S FEES TO APPELLEE'S ATTORNEY FOR APPEALING THE AWARD OF SPOUSAL MAINTENANCE WHERE THE ISSUES ON APPEAL EITHER CONCERN ONLY, OR ARISE AS A RESULT OF, THE COURT-ORDERED SPOUSAL MAINTENANCE AWARD…………………………………………………….44

**Topic**                                                                      **Page No.**

**ISSUE NO. XIII.** THE TRIAL COURT ABUSED ITS DISCRETION BY AWARDING APPELLEE ATTORNEY'S FEES FOR HER APPEAL REGARDING SPOUSAL MAINTE- NANCE AS A NECESSARY, WHEN ATTORNEY'S FEES CANNOT BE CLASSIFIED AS A NECESSARY IN LITIGATION UNDER THE TEXAS FAMILY CODE.………………….....…....44

**ISSUE NO. XIV.** THE TRIAL COURT ABUSED ITS DISCRETION BECAUSE THE EVIDENCE WAS LEGALLY INSUFFICIENT TO AWARD ATTORNEY'S FEES TO APPELLEE IN ADVANCE OF HER APPEAL AS A NECESSARY, WHERE ATTORNEY'S FEES CANNOT BE CLASSIFIED AS A NECESSARY IN LITIGATION UNDER THE TEXAS FAMILY CODE…44-45

    A. Legislative history of Texas Family Code Section 6.709…………………...47

**ISSUE NO. XV.** THE TRIAL COURT ABUSED ITS DISCRETION BY IMPUTING A NON-RECURRENT AND UNDEPENDABLE SALARY BONUS (OR BONUSES) TO APPELLANT BEFORE CALCULATING THE AMOUNT OF SPOUSAL MAINTENANCE APPELLANT WOULD PAY ANNUALLY FOR 7 YEARS BY ASSESSING THE FULL 20% ALLOWED BY STATUTE………………………………………………………………………..51

Conclusion and Prayer………………………………………………………………57
Certificate of Service.....………….…………………………………………….....58
Certificate of Compliance.................................................................................59

Appendices

    Appendix A. - Final Decree of Divorce
    Appendix B. - Findings of Fact & Conclusions of Law
    Appendix C. - Rule 11 Stipulation Agreement

# INDEX OF AUTHORITIES

**Cases Cited**                                                    **Page No.**

*Carlin v. Carlin*, 92 S.W.3d 902 (Tex. App. Beaumont 2002, no pet.)……...................20

*Casole v. Casole,* No. A-4654-06T2 (N.J. Super. Ct. App. Div.  March 31, 2008)…......55

*Clanin v. Clanin*, 918 S.W.2d 673 (Tex. App. Fort Worth 1996, no writ)…………....35

*Cole v. Cole*, 384 N.W.2d 312 (S.D. 1986)…………………………………….…56

*Dennis v. Smith*, 962 S.W.2d 67 (Tex. App. Houston [1st Dist.] 1997, pet. denied)….42

*Donzis v. McLaughlin*, 981 S.W.2d 58 (Tex. App. San Antonio 1998, no pet.)…..22, 35

*Easter v. Easter,* 2013 WL 53849 (Ky. Ct. App. Jan. 4, 2013)(unpub.)……………....43

*Ellis v. Emil Blum Co.,* 242 S.W. 1099 (Tex. Civ. App. 1922, no writ)……………....30

*Engineer v. Engineer*, 187 S.W.3d 625(Tex. App. Houston [14th Dist.] 2006, no pet.)..36

*Everett v. Everett*,  421 S.W.3d 918 (Tex. App. El Paso 2014, no pet.)……….22, 37, 39

*Fitch v. Fitch,* 2013 WL 2610143 (Tex. App. Dallas June 7, 2013)(unpub.)…………44

*F.K.M. Partnership, Ltd. v. Board of Regents,* 225 S.W.3d 619 (Tex. 2008)……………54

*Galveston H. & H. R. Co. v. Anderson*, 229 S.W. 998 (Tex. Civ. App. Galveston 1920, writ ref'd.)………………………………………………………………………....24

*Gonzales v. Gonzales,* 300 S.W. 20 (Tex. Comm'n App. Sec. A 1927)………..………29

*Henderson v. Henderson,* 327 A.2d 60 (Pa. 1974)………………………………41, 42

*Henderson v. Wietzikoski*, 841 S.W.2d 101 (Tex. App. Waco 1992, pet. denied)……..42

*In re A.D.,* No. 14-12-00914-CV (T>A> Houston [14th Dist.] 2014(unpub.)…...…..35

*In re Dryden*, 52 S.W.3d 257 (Tex. App. Corpus Christi 2001, no pet.)……………..46

**Cases Cited (cont.)**                                                    **Page No.**

*In the Interest of L.T.H., R.R.H., & A.W.H.,* 418 S.W.3d 876 (Tex. App. Dallas 2013, pet. denied)…………………………………………………………………………22, 34

*In re T.A.W., L.J.W., M.M.W., & J.M.W.,* No. 02-09-309-CV (Tex. App. Ft. Worth 2010)(unpublished)……………………………………………………………...28

*In re T.B.,* 2009 WL 891882 (Tex. App. San Antonio April 3, 2009)(unpub.)……... 35

*In the Matter of the Marriage of Nolder,* 48 S.W.3d 432 (Tex. App. Texarkana 2001, no pet.)…………………………………………………………………………....36

*In re Marriage of Thurmond,* 888 S.W.2d 269 (Tex. App. Amarillo 1994, writ denied). 28

*In re Unnamed Baby McLean*, 725 S.W.2d 696 (Tex. 1987)……………………………. 42

*In re Garza*, 153 S.W.3d 97 (Tex. App. San Antonio 2004, no pet.)………………..47

*Jourdan v. Jourdan*, No. 04-10-00402-CV (Tex. App. San Antonio 2011)(unpub.)..…44

*Keim v. Anderson*, 943 S.W.2d 938 (Tex. App. El Paso 1997, no pet.)…………...22, 36

*Keith v. Keith*, 221 S.W.3d 156 (Tex. App. Houston [1st Dist.] 2006, no pet.)…………………………………………………………………22, 39, 40, 49

*Koelm v. Koelm*, 2011 WL 2162879 (Tex. App. Austin 2011)(unpublished)…………38

*McLendon v. McLendon*, 847 S.W.2d 601 (Tex. App. Dallas 1992, writ denied)…..34-36

*McGregor v. Clawson*, 506 S.W.2d 922 (Tex. Civ. App. Waco 1974, no writ)………...24

*McKee v. Popular Dry Goods Co.*, 240 S.W. 567 (Tex. Civ. App. El Paso 1922, no writ)…………………………………………………………………………………31

*Meritor Automotive, Inc. v. Ruan Leasing*, 44 S.W.3d 86 (Tex. 2001)…………………..49

**Cases cited (cont.)** **Page No.**

*Milner v. Milner,* 2014 WL 1096339 (N.J. Super. Ct. App. Div. March 21, 2014)........43

*O'Carolan v. Hopper,* 71 S.W.3d 529 (Tex. App. Austin 2002, no pet.)……………... 32

*Paddock v. Siemoneit*, 218 S.W.2d 428 (Tex. 1949)…………………………………..54

*Pohla v. Pohla,* 2010 WL 877555 (Tex. App. Beaumont March 11, 2010(unpub.).35, 36

*Post v. Garza*, 867 S.W.2d 88 (Tex. App. Corpus Christi 1993, no pet.)……………48

*Rice v. Mercantile Bank & Trust,* 86 S.W.2d 54 (Tex. Civ. App. Dallas 1935, no writ).31

*Rodriguez v. Rodriguez,* 860 S.W.2d 414 (Tex. 1993)……………………………...21, 28

*Sanchez v. Sanchez,* 2008 WL 3971274 (Tex. App. Corpus Christi 2008)(unpub.)….. 35

*Saper v. Rodgers,* 418 S.W.2d 874 (Tex. App. Houston [1st Dist.] 1967, writ ref'd. n.r.e.) ………………………………………………………………………………………..39, 40

*Smith v. Baldwin,* 611 S.W.2d 611 (Tex. 1980)……………………………….…....49

*Smith v. Smith*, 454 So.2d 1136 (4th Ct. App. La.), writ denied, 458 So.2d 478 (La. 1984)………………………………………………………………………………....28

*Southwest Properties, L.L.P. v. Lite-Dec of Texas*, 989 S.W.2d 69 (Tex. App. San Antonio 1998, pet. denied)…………………………………………………………………54

*Stevenson v. Stevenson,* 511 A.2d 961 (R.I. 1986)……………………………………..32

*Taylor v. Husted & Tucker,* 257 S.W. 232 (Tex. Comm'n App. 1924)………………30

*Tedder v. Gardner Allrich, L.L.P.,* 421 S.W.3d 651 (Tex. 2013)………..21, 22, 28, 30, 45

*Texaco, Inc. v. Pennzoil, Inc.*, 729 S.W.2d 768 (Tex. App. Houston [1st Dist.] 1987, writ ref'd. n.r.e., cert. denied, 485 U.S. 994, 108 S.Ct. 1305, 99 L.Ed.2d 686(1988)…… 39

*Toles v. Toles*, 45 S.W.3d 252 (Tex. App. Dallas 2001, pet. denied)…………………46

**Cases cited (cont.)**                                                    **Page No.**

*Tomsu v. Tomsu,* 381 S.W.3d 715 (Tex. App. Beaumont 2012, no pet.)…………21, 38

*Tucker v. Thomas,* 419 S.W.3d 292 (Tex. 2013)…………………………….....22, 46

*Vickrey v. American Youth Camps, Inc.,* 532 S.W.2d 292 (Tex. 1976)(per curiam)...22, 35

*Walker v. Townslee,* 677 S.W.2d 502 (Tex. 1984)…………………………......47, 48

*Wallace v. Briggs*, 348 S.W.2d 523 (Tex. 1961)…………………….……………...48

*Winkie v. Conatser,* 171 S.W. 1017 (Tex. Civ. App. Amarillo 1914, writ ref'd.)….…..30

*Woodruff v. Woodruff,* 487 S.W.2d 791 (Tex. Civ. App. Texarkana 1977, no writ)…..31

**Constitutions and Statutes Cited**                                    **Page No.**

Fourteenth Amendment, United States Constitution…………………….……..47
Article I, Sec. 3a, Texas Constitution…………………………………...22, 40-42, 44
Texas Family Code Ann. Sec. 2.501 (West 2006)…………………………….....21, 30
Texas Family Code Ann. Sec. 6.709 (O'Connor's 2013-2014)…………………47-50
Texas Family Code Ann. Sec. 9.007………………………………………...22, 37
Texas Family Code Ann. Sec. 8.001 (West Supp. 2012)…………………………..52
Texas Family Code Ann. Sec. 8.051 (West Supp. 2012)………………………21, 38
Texas Family Code Ann. Sec. 8.052(1) (West Supp. 2012)………………………...52
Texas Family Code Ann. Sec. 8.052(4), (8) (West Supp. 2012)…………………….52
Texas Family Code Ann. Sec. 8.053 (West Supp. 2012)………...20, 21, 23, 24, 25, 27
Texas Family Code Ann. Sec. 8.053(a) (West Supp. 2012)…………………20, 24, 25
Texas Family Code Ann. Sec. 8.055(1)(A)(a-1)(West Supp. 2012)……………...52, 53
Texas Family Code Ann. Sec. 8.054(a)(1)(B) (West Supp. 2012)………………….51
Texas Family Code Ann. Sec. 8.055 (West Supp. 2012)…………………………...52
Texas Family Code Ann. Sec. 156.405 (West 2014)………………….…………28
Texas Family Code Ann. Sec. 159.102(5) (West 2014)……………………….....53, 54
(All references to West Supp. 2012 were also verified in O'Connor's 2013-2014)
Texas Civil Practice & Remedies Code Sec. 154.071(a) (West 2011)…………....22, 38
Texas Government Code Ann. Sec. 312.002(a) (West 2013)……………………....54
Texas Government Code Ann. Sec. 311.011(a) (West 2013)……………………....54
Former Texas Family Code Sections 3.58, 3.58(c), 3.58(h)....................................47-49
Former Texas Family Code Sec. 4.02 …………………………………………….30
Former Articles 4613-4641 (V.A.C.S.)…………………………………………29

## Constitutions and Statutes Cited (cont.)                    Page No.

Rule 11, Texas Rules of Civil Procedure…………………………...21, 36, 38, 40, 41

## Miscellaneous Authorities                    Page No.

39 Tex. Jur. 3d, Family Law, Sec. 105 (Thomson West 2005)……………………..21
67 Tex. Jur. 3d, Statutes, Sec. 74 (West 2003)…………………………………..24
41 C.J.S., Husband & Wife, Sec. 50 (West 1991)………………………………..29
Merriam Webster's Collegiate Dictionary (11th ed. 2003)………………………….54
Webster's Third New International Dictionary  (1981)…………………………... 54

# ABBREVIATIONS USED

Herein, the following abbreviations are used:

"C.R." or "CR" stands for "Clerk's Record;" "R.R." or "RR" stands for "Reporter's Record," while all references to **Roman numerals refer to the volume number** thereof, and **Arabic** numerals refer to either the page number or line number, and a line number will only be seen immediately after a page number; Ex.:"RR, I:38, l. 25." Line numbers will always be preceded by an "l." "Exhib." or "Exh." Means "Exhibit;" "Appt." means "Appellant;" "hg." means "hearing;" "emph. added" means "emphasis added;" unpublished cases will be designated as "unpub." or variants of "not desig. for pub'n.," etc. "Appx" or "Appx." means "Appendix." "Section" is abbreviated "#" or "Sec.;" "in pert. part" means "in pertinent part;" "No." = "Number;" "Tex. Const." means "Constitution of the State of Texas;" "U.S." means "United States;" "aff'd. in pt., rev'd. in pt." means "affirmed in part, reversed in part;" "rev'd. o.o.g." means "reversed on other grounds." "R." stands for "Rule;" "TRAP" or "T.R.A.P." stands for the Texas Rules of Appellate Procedure. "Tex. F.C." means "Texas Family Code;" "Ann." means "Annotated." "West" or "West Supp." refers to Vernon's Statutes. Unpublished cases may be abbreviated several ways: "Unpub." or "not desig. For publication" or "not desig. for pub'n.," or variations thereof. "Art." means "Article." Fuller citations will frequently appear in the Index of Authorities. The Uniform System of Citations and Texas Rules of Form are used herein.

## STATEMENT OF THE CASE

Appellant and Appellee were married for 24 years. No children were born of their marriage, although Appellee has children from a previous marriage. Appellant filed an Original Petition for Divorce on January 31, 2014, in No. E-140,080-D, in County Court at Law #2 of Orange County, Texas, the Honorable Troy Johnson, presiding. A Rule 11 Stipulated Agreement encompassing the property division was filed on August 5, 2014 (CR, **I:    ).** Trial occurred on August 18, 2014 (and was supposed to be limited to spousal maintenance issues due to the Rule 11 Agreement).

The Final Decree of Divorce was signed on October 30, 2014, and is appended.

A Request for Findings of Fact and Conclusions of Law was timely filed on December 5, 2014. A Motion for New Trial was filed on November 20, 2014, and a Notice of Appeal was filed on November 24, 2014. Appellee filed a Motion for Temporary Orders on November 24, 2014, and a hearing and Temporary Orders resulted on December 15, 2014. Appeal is from the Final Decree of Divorce and from the Temporary Orders of December 15th.

An Amended Notice of Appeal was filed on January 22, 2015.

# ISSUES PRESENTED

**ISSUE NO. I.** THE TRIAL COURT ABUSED ITS DISCRETION AS A MATTER OF LAW BY USING APPELLEE'S ALLEGED PHYSICAL DISABILITY TO OVERCOME THE TEXAS FAMILY CODE # 8.053 PRESUMPTION THAT SPOUSAL MAINTENANCE WAS NOT WARRANTED.

**ISSUE NO. II.** THE TRIAL COURT ABUSED ITS DISCRETION BECAUSE THE EVIDENCE WAS LEGALLY INSUFFICIENT TO REBUTT THE TEXAS FAMILY CODE # 8.053 PRESUMPTION.

**ISSUE NO. III.** THE TRIAL COURT ABUSED ITS DISCRETION BY GRANTING SPOUSAL MAINTENANCE INASMUCH AS THE EVIDENCE ADDUCED AT TRIAL WAS FACTUALLY INSUFFICIENT TO REBUTT THE TEXAS FAMILY CODE SECTION 8.053 PRESUMPTION.

**ISSUE NO. IV.** THE TRIAL COURT ABUSED ITS DISCRETION BY USINGSPOUSAL MAINTENANCE TO TRY TO CONTINUE APPELLEE IN HERFORMER MARITAL STANDARD OF LIVING, THUS REQUIRING REVERSAL.

**ISSUE NO. V.** BECAUSE 'SPOUSAL MAINTNANCE' CAN ONLY BE TO SUPPLY OR MEET 'REASONABLE MINIMUM NEEDS' OR NECESSARIES, THE TRIAL COURT ABUSED ITS DISCRETION BY AWARDING APPELLEE SPOUSAL MAINTENANCE AMOUNTS WHICH EXCEED HER 'MINIMUM REASONABLE NEEDS' AS OPERATIVELY DEFINED UNDER TEXAS LAW.

**ISSUE NO. VI.** THE EVIDENCE WAS FACTUALLY INSUFFICIENT TO SET SPOUSAL MAINTENANCE AT $1625 PER MONTH, WHERE APPELLEE'S MONTHLY EXPENSE SHEET CONTAINED VAGUE HEADINGS WHICH CLAIMED EXPENSES IN ROUND NUMBERS, BUT HAD NO RECEIPTS TO VERIFY THE AMOUNT CLAIMED.

**ISSUE NO. VII.** THE TRIAL COURT ABUSED ITS DISCRETION BECAUSE THE PROPERTY SETTLEMENT AGREEMENT WHICH IS INCORPORATED INTO THE FINAL DECREE IS BASED ON A RULE 11 STIPULATION MAKING IT A CONTRACTUAL TERM OF THE DECREE, WHEREBY THE DEBT ON THE PARTIES' HOUSE, TOGETHER WITH THE HOUSE ITSELF, WAS AWARDED TO APPELLEE, AND HENCE, APPELLANT CANNOT BE ORDERED TO PAY SAID MORTGAGE DEBT AS SPOUSAL MAINTENANCE AS WAS LATER ORDERED, THUS REQUIRING REVERSAL AND REMAND.

**ISSUE NO. VIII.** THE TRIAL COURT ABUSED ITS DISCRETION BECAUSE THE PROPERTY SETTLEMENT AGREEMENT WHICH IS INCORPORATED INTO THE FINAL DECREE IS BASED ON A RULE 11 STIPULATION MAKING IT A CONTRACTUAL TERM OF THE DECREE, WHEREBY THE DEBT ON APPELLEE'S SILVERADO TRUCK, TOGETHER WITH THE TRUCK, WAS AWARDED TO APPELLEE, AND HENCE APPELLANT CAN-NOT BE ORDERED TO PAY SAID DEBT AS SPOUSAL MAINTENANCE AS WAS LATER ORDERED, THUS REQUIRING REVERSAL AND REMAND.

**ISSUE NO. IX.** THE TRIAL COURT ABUSED ITS DISCRETION BY ORDERING APPELLANT TO PAY APPELLEE'S DEBTS ON THE MAURICEVILLE RESIDNCE AND THE SILVERADO, WHERE TRIAL PROOF DID NOT OVERCOME THE FAMILY CODE SECTION 8.051 REQUIREMENT THAT SEPARATE PROPERTY WOULD NOT AVAIL TO SATISFY THESE NEEDS, THEREBY REQUIRING REVERSAL.

**ISSUE NO. X.** THE TRIAL COURT ABUSED ITS DISCRETION BY NOT OFFSETTING INCOME RESOURCES READILY AVAILABLE TO APPELLEE, WHERE HE IMPUTED LONG-TERM LARGE BONUSES TO APPELLANT, AND DID NOT OFFSET FACTORS LIKE APPELLANT'S HOUSING EXPENSES IN SETTING THE BASE AMOUNTS USED TO CALCULATE SPOUSAL MAINTENANCE.

16

**ISSUE NO. XI.** ALTERNATIVELY, IT VIOLATED ARTICLE I, SECTION 3a, OF THE TEXAS CONSTITUTION, TO IMPUTE INCOME TO APPELLANT, WITHOUT ALSO IMPUTING SOURCES OF INCOME ATTRIBUTABLE TO APPELLEE AT HER AGE OF 65 AND POST-DIVORCE, IN CALCULATING HER REASONABLE MINIMUM NEEDS.

**ISSUE NO. XII.** THE TRIAL COURT ABUSED ITS DISCRETION BY AWARDING $5,000.00 IN ATTORNEY'S FEES TO APPELLEE'S ATTORNEY FOR APPEALING THE AWARD OF SPOUSAL MAINTENANCE WHERE THE ISSUES ON APPEAL EITHER CONCERN ONLY, OR ARISE AS A RESULT OF, THE COURT-ORDERED SPOUSAL MAINTENANCE AWARD.

**ISSUE NO. XIII.** THE TRIAL COURT ABUSED ITS DISCRETION BY AWARDING APPELLEE ATTORNEY'S FEES FOR HER APPEAL REGARDING SPOUSAL MAINTENANCE AS A NECESSARY, WHEN ATTORNEY'S FEES CANNOT BE CLASSIFIED AS A NECESSARY IN LITIGATION UNDER THE TEXAS FAMILY CODE.

**ISSUE NO. XIV.** THE TRIAL COURT ABUSED ITS DISCRETION BECAUSE THE EVIDENCE WAS LEGALLY INSUFFICIENT TO AWARD ATTORNEY'S FEES TO APPELLEE IN ADVANCE OF HER APPEAL AS A NECESSARY, WHERE ATTORNEY'S FEES CANNOT BE CLASSIFIED AS A NECESSARY IN LITIGATION UNDER THE TEXAS FAMILY CODE.

**ISSUE NO. XV.** THE TRIAL COURT ABUSED ITS DISCRETION BY IMPUTING A NON-RECURRENT AND UNDEPENDABLE SALARY BONUS (OR BONUSES) TO APPELLANT BEFORE CALCULATING THE AMOUNT OF SPOUSAL MAINTENANCE APPELLANT WOULD PAY ANNUALLY FOR 7 YEARS BY ASSESSING THE FULL 20% ALLOWED BY STATUTE.

# STATEMENT OF FACTS

After 24 years of marriage, Appellant filed for divorce on January 31, 2014. There are no children of the marriage. The parties' Rule 11 Agreed Stipulation was supposed to be a full property settlement, making spousal maintenance the only trial issue (CR, I: 24). The Final Decree incorporates its terms, including award of loan debts on the Mauriceville homestead and Silverado to Appellee, as agreed. But, at trial, Appellee obtained rulings making Appellant pay said debts as spousal maintenance, even though she already owns a lake-house estate and classic car as separate property, and there was no effort to adjust or offset their values or impact at any time, nor did the court consider other income now available to Appellee, who turned 65 on September 26, 2014, making her eligible for increased federal benefits, plus her late husband's pension (RR, II:28-29).

The court set spousal maintenance at the maximum $1,625/month, for the maximum duration of 7 years. Then, after we appealed, on December 15, 2014, the court awarded opposing counsel $5,000.00 as an advance on appellate attorney's fees, and ruled the Appellant to be unable to deduct interim temporary spousal support of $1625/month, which also does not count as part of the 7 years of spousal support. That Order has also been appealed.

18

## SUMMARY OF ARGUMENT

Due to the 2011 repeal of Tex. F.C. #8.053(b), Appellee's disability cannot be used to overcome Tex. F.C. #8.053(a)'s presumption that "maintenance…is not warranted," particularly since dissolution of the marriage had already occurred for purposes of F.C. #8.053(a)(2), at the September 30, 2014 hearing. Yet, Finding of Fact #5 shows disability was what was used to surmount said presumption. The only other statutory alternative way to overcome said presumption was if Appellee was actively seeking employment [F.C. #8.053(a)(1)], and she admitted there had been no effort on her part to find work(RR, II:39-40). There were also no medical records offered as evidence, and none to show whether her carpal tunnel syndrome was more than a partial disability, while Appellee's testimony on this was totally subjective. *See Carlin v. Carlin*, 92 S.W.3d 902, 910 (Beaumont 2002, no pet.). These factors also describe Appellee's showings affecting the duration of the maintenance order pursuant to Tex. F.C. #8.054(a)(2). Reversal is warranted because Appellee did not overcome the Texas F.C. #8.053 presumption, her evidence being legally and factually insufficient to do so.

The trial court further abused its discretion by awarding maintenance amounts which exceeded her 'minimum reasonable needs' or necessaries, and the Monthly Expense sheet evidence (Resp. Exh. #2) supporting the award was legally and

factually insufficient to the extent there were no receipts to support the vague headings usually stated in very round numbers.

Although minimum reasonable needs are statutorily undefined, derivation shows that they are synonymous with common-law necessaries essential to sustenance, including food, clothing, shelter, medical care, and transportation. *Tedder,* 421 S.W.3d at 656; Tex. F.C. #2.501. However, Texas law does not allow support to restore parties to their pre-divorce standard of living. *See Rodriguez,* 860 S.W.2d 416, fn. 3; Tex. F.C.Sec. 156.405. Expenses which serve to maintain or aid in improving Appellee's separate property do not constitute necessaries. 39 Tex. Jur.3d, Family Law # 105.

The Monthly Expense sheet (Resp. Exh. #2) used to calculate maintenance was excessive in several aspects. "Various Sundries" were valued at $200/mo., but they were only alluded to in court as 'toiletries.' The cell phone monthly expense ($130) was exorbitant. More importantly, Appellee already owns a $40,000 lake-house on Toledo Bend lake, and a 1965 Ford Mustang fastback valued at $23,000, so she had both shelter and transportation, -although she was also awarded the parties' homestead in Mauriceville, Texas, and a new Chevy Silverado truck. Texas Family Code Sections 8.051, 8.053, and 8.054 require all such separate property to be taken into account in setting and awarding spousal maintenance, but it was not, because no offsets or adjustments were even made in calculations. *See Tomsu,* 381 S.W.3d at 717.

Further, the parties already had a Rule 11, TRCP, Stipulated Property Settlement Agreement controlling the entire property division. When it was entered, the parties understood trial would only be about maintenance. Under it, Appellee received their Mauriceville residence and the new Chevy Silverado truck, and assumed full responsibility for the debts on both of said items.

Then, despite their binding settlement agreement, Appellee had the court assess Appellant the $979/mo. and $225/mo. notes on these 2 items as part of the $1,625.00 monthly maintenance he is to pay. Because both the trial court's incorporation of the terms of the Rule 11 Agreement, requiring Appellee to assume these notes, and the maintenance provisions ordering Appellant to pay $1625/mo. (including said notes) are part of the Decree, the spousal maintenance parts are unenforceable. *Vickrey,* 532 S.W.2d 292 (Tex. 1976)(per curiam); *In re L.T.H.,* 418 S.W.3d at 882; *Donzio,* 981 S.W. 2d at 63; *Keim,* 943 S.W.2d at 946. Converting a debt into spousal maintenance also cannot be enforced under Tex. F.C. #9.007. *Everett,* 421 S.W.3d at 921. Only the Rule 11 Stipulation part of the Decree remains binding. Tex. C.P.R.C. # 154.071(a). Parties cannot lead the trial court into such error and then complain on appeal. *Keith*, 221 S.W. 3d at 172. Further, the failure to consider sources of income available to Appellee as offsets is error, under case-law and Art. I, # 3a, Tex. Const. Further, the court awarded Appellee's attorney $5,000 as attorney's fees for doing her appeal, even though under Texas law, such an award cannot be made until Appellee has won her appeal. Further, said fees were awarded as

21

necessaries, which is reversible error. *Tedder,* 421 S.W.3d 651. *See Tucker*, 419 S.W.3d 292. Reversal is necessitated on many of these grounds as a matter of law. Hence, only some of the reversed grounds require remand.

## ARGUMENT AND AUTHORITIES

**ISSUE NO. I.** THE TRIAL COURT ABUSED ITS DISCRETION AS A MATTER OF LAW BY USING APPELLEE'S ALLEGED PHYSICAL DISABILITY TO OVERCOME THE TEXAS FAMILY CODE # 8.053 PRESUMPTION THAT SPOUSAL MAINTENANCE WAS NOT WARRANTED.

**ISSUE NO. II.** THE TRIAL COURT ABUSED ITS DISCRETION BECAUSE THE EVIDENCE WAS LEGALLY INSUFFICIENT TO REBUTT THE TEXAS FAMILY CODE # 8.053 PRESUMPTION.

**ISSUE NO. III.** THE TRIAL COURT ABUSED ITS DISCRETION BY GRANTING SPOUSAL MAINTENANCE INASMUCH AS THE EVIDENCE ADDUCED AT TRIAL WAS FACTUALLY INSUFFICIENT TO REBUTT THE TEXAS FAMILY CODE SECTION 8.053 PRESUMPTION.

The trial court made two separate findings to justify the payment of spousal maintenance to Appellee, Findings of Fact Nos. 4 and 5. However, to receive maintenance, Appellee had to overcome the presumption found in Texas F.C. # 8.053 that maintenance would be unwarranted for her. The trial court's only finding in that regard was Finding of Fact No. 5, which reads in its entirety:

"5. BRENDA FAYE DRYDEN is unable to earn sufficient income to provide for her minimum reasonable needs because of an incapacitating physical disability."

Up until the repeal of former Tex. Fam. Code Sec. 8.053(b) by Acts 2011, 82nd Legislature, ch. 486, # 9(1), which became effective on September 1, 2011, it was possible to overcome the Sec. 8.053 presumption and thereby justify an award of spousal maintenance, due to an incapacitating disability. Here, the Original Petition was filed on January 31, 2014. (C.R., I: 4). Hence, the applicable law at the time of trial herein, as stated immediately below, no longer contained subsection (b):

23

**Family Code # 8.053 Presumption**

(a) It is a rebuttable presumption that <u>maintenance</u> under Section 8.051(2)(B) <u>is not warranted unless the spouse</u> seeking maintenance <u>has exercised diligence in</u>:
    (1) <u>earning sufficient income</u> to provide for the spouse's minimum reasonable needs; <u>or</u>
    (2) <u>developing the necessary skills to provide for the spouse's minimum reasonable needs</u> during a period of separation and during the time the suit for dissolution of the marriage is pending. (emphasis added).

A. <u>Rules applicable when a statutory provision is repealed.</u>

The statute repealing Tex. F.C. # 8.053(b) expressly repeals subsection (b), and adds nothing new in its place. The following rules therefore apply:

…A valid express repeal abrogates, destroys, or supersedes the act or provision against which it is directed. Thereafter the statute repealed is considered as though it had never existed, except as to transactions past and closed….

…A general repealing clause is effective to repeal prior enactments to the extent that they are inconsistent with, or repugnant to, the terms of the later statute.

67 Tex. Jur. 3d, Statutes, #74. Generally; abrogation of statute (West 2003), citing *Galveston H. & H.R. Co. v. Anderson,* 229 S.W. 998 (Tex. Civ. App. Galveston 1920, writ ref'd.); *McGregor v. Clawson,* 506 S.W.2d 922 (Tex. Civ. App. Waco 1974, no writ).

Thus, Finding of Fact #5 is legally insufficient as a matter of law to justify overcoming the statutory presumption that maintenance is not warranted in the instant case. In terms of the remaining proof required to overcome the presumption under F.C. # 8.053(a), Finding No. 5 further demonstrates that the trial court did not perceive that any such further proof, if any, was available to overcome said presumption. Finding of Fact No. 4 only states that Appellee 'will lack sufficient

24

property (including her separate property) to provide for her minimum reasonable needs.'

Because a finding of incapacitating disability is the only ground which Judge Johnson relied on in overcoming the Tex. F.C. # 8.053 presumption, the trial court abused its discretion as a matter of law, and committed reversible error, inasmuch as the statutory presumption was not overcome. The evidence is therefore legally insufficient to support the court's award of spousal maintenance to Appellee.

This lack of proof is reflected in the Reporter's Record where Appellee admitted there had been no effort on her part to find employment (See RR, II:39, l.16-40, l. 6), as required under F.C. # 8.053(a)(1) and (2) (above). Further, no documentary evidence of the extent of Appellee's current medical condition was adduced at trial.

There are many types of gainful employment which 65 year old persons with a carpal tunnel type of disability can still do with little additional training, including: phone receptionist, and jobs out-of-doors, such as gardening, -to name but a few, and some of which Appellee already seems familiar with. For example, Appellee admitted to brush-hogging a tract of land recently (RR, II:40, l.16-21); to cleaning house, mowing grass, and baby-sitting her grandchildren(RR, II:35-36, l. 7); to bowling with a 13-pound bowling ball (RR, II:36, l. 10); and to deep sea fishing (RR, II:36, l. 22), for which Petitioner's Exhibit Nos. 2 and 3(RR, IV) display pictures of

her holding some of the fish she has caught, Exhibit #2 being a 20 pound fish caught the previous year (RR, II:37, l. 5-p. 38, l. 15).

Also, Appellee was 65 when the Final Decree was signed and entered on October 30, 2014, and to our knowledge, still had not applied for regular Social Security. (Her birthdate is September 26th.) Appellee did give evidence that she receives $670.00 per month (net) as S.S.I. payment for her carpal tunnel syndrome. There was never any documentary evidence adduced that Appellee's disability(s) are more than partial.

Receiving Social Security and Medicare are the tried and true ways that most people who are Appellee's age meet their reasonable minimum needs. The trial court had notice of this, since Appellee's age bordering on 65 is stated at R.R., II: p. 10, l. 14-18. Because of this errant award of maintenance based on disability, Appellee may now be disqualified from receiving the full value of various Social Security entitlement programs she now qualifies for, such as food stamps and housing assistance, particularly due to the higher amounts she now must claim as income thrown in by the trial court.

On the above grounds, Appellant respectfully prays that the Final Decree of Divorce be reversed and remanded for further hearing consistent with the opinion of this Court.

26

**ISSUE NO. IV.** THE TRIAL COURT ABUSED ITS DISCRETION BY USING SPOUSAL MAINTENANCE TO TRY TO CONTINUE APPELLEE IN HER FORMER MARITAL STANDARD OF LIVING, THUS REQUIRING REVERSAL.

**ISSUE NO. V.** BECAUSE 'SPOUSAL MAINTENANCE' CAN ONLY BE  TO SUPPLY OR MEET 'REASONABLE MINIMUM NEEDS' OR NECESSARIES, THE TRIAL COURT ABUSED ITS DISCRETION BY AWARDING APPELLEE SPOUSAL MAINTENANCE AMOUNTS WHICH EXCEED HER 'MINIMUM REASONABLE NEEDS' AS OPERATIVELY DEFINED UNDER TEXAS LAW.

**ISSUE NO. VI.** THE EVIDENCE WAS FACTUALLY INSUFFICIENT TO SET SPOUSAL MAINTENANCE AT $1625 PER MONTH, WHERE APPELLEE'S MONTHLY EXPENSE SHEET CONTAINED VAGUE HEADINGS WHICH CLAIMED EXPENSES IN ROUND NUMBERS, BUT HAD NO RECEIPTS TO VERIFY THE AMOUNT CLAIMED.

Overcoming the Sec. 8.053 presumption requires that the trial court consider whether Appellee's separate property could be used to satisfy some of her needs. Because the trial court did not require either sale of or renting of Appellee's lake house, nor the sale of her separate 1965 Mustang fastback automobile, but instead required Appellant to pay the note on a new homestead ($979/mo.) and a new truck ($225/mo.) as maintenance, after the debts for these items were awarded to Appellee in the contractual stipulated settlement, it is obvious Appellee's minimum needs are being exceeded by looking to what she was buying during her marriage to Appellant. Thus, the court based maintenance in part on Appellee's former standard of living.

Appellant submits that, because former standard of living is outlawed in Texas for setting child support, that it is also not permissible to use it as a factor in

27

setting spousal maintenance. In *Rodriguez v. Rodriguez,* 860 S.W.2d 414, 416-17, at fn. 3 (Tex. 1993), the Supreme Court stated, in pertinent part:

…The 1989 codification of # 14.055(c) specifically omitted lifestyle and income as factors to be considered in awarding additional child support, leaving only needs of the child. We presume that legislature omitted these phrases for a reason when it codified the Supreme Court Guidelines. *See Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 540 (Tex. 1981)….

The following Texas cases all support the view that former lifestyle may not be considered when setting child support and therefore, logically, spousal support:

*In re Marriage of Thurmond,* 888 S.W.2d 269, 278 (Tex. App. Amarillo 1994, writ denied);

*In the Interest of T.A.W., L.J.W., M.M.W., & J.M.W.,* No. 02-09-309-CV (Tex. App. Fort Worth Nov. 24, 2010). See Tex. Fam. Code Ann. Sec. 156.405 ( West 2014).

A. What constitutes 'reasonable minimum needs?'

Texas courts frequently address this issue by stating that 'reasonable minimum needs' is not defined by the statutes, and then determine a threshold amount for the obligee on a case by case basis.

A Louisiana case gives the needs to be met by "maintenance" as food, clothing, shelter, medical care, transportation, and household expenses. *See Smith v. Smith,* 454 So.2d 1136 (4th. Ct. App. La.), *writ denied,* 458 So.2d 478 (La. 1984). The Texas Supreme Court indicates that, other possibly than household expenses, these would be what 'necessaries' are in Texas, and thereby 'spousal maintenance' where necessary for someone's sustenance. *Tedder v. Gardner Allrich, LLP,* 421 S.W.3d 651(Tex. 2013).

28

In most states, the earlier, common-law form of "reasonable minimum needs" was the law of necessaries. In fact, alimony originated from the common law right of the husband to control the property during marriage. Thus, when a spouse would succeed in obtaining either a 'divorce from bed and board' or a legal separation, it was still the duty of the husband in many states to provide necessaries for his wife until a complete divorce eventuated.

The definitional interchangeability between "reasonable minimum needs" and the doctrine of marital necessaries is obviated by the following excerpt:

> …The husband's common-law liability for his wife's necessaries continues until such time as the court awards alimony to the wife. If the wife does not apply for temporary alimony, the husband's common-law liability to provide her with necessaries continues. 41 C.J.S., Husband and Wife, Sec. 50 (West 1991).

Prior to the Texas Family Code, the rights of the wife to recover expenses for such needs, were limited to the provisions of former Articles 4628-4641 (V.A.C.S.), which largely dealt with divorce, and former Articles 4613, 4621, and 4623 (V.A.C.S.), which made the wife an agent of the husband to purchase necessaries and made his separate property liable for the debts so contracted. *Gonzales v. Gonzales,* 300 S.W. 20 (Tex. Comm'n. App., Sec. A 1927). By 1995, this statutory duty of support read:

(a) Each spouse has the duty to support the other spouse.

(b) A spouse who fails to discharge the duty of support is liable to any person who provides necessaries to the spouse to whom support is owed.

Texas Family Code # 2.501 (2006), identical to former Texas Family Code # 4.02, as amended by 74th Leg., R.S. (1995), chap. 751, section 4, effective September 1, 1995.

…Transportation expenses may be necessaries. However, purchases to aid the wife in carrying on a business of her own, <u>expenses for improving or developing her separate property, and commissions to a broker for effecting an exchange of her separate</u> property do not come under the heading of necessaries.

39 Tex. Jur. 3d, Family Law, Sec. 105 (Thomson West 2005)(emphasis added).

The Texas Supreme Court recently emphasized that 'necessaries' are limited to items required for maintenance:

…a spouse's necessaries are things like food, clothing, and habitation-that is, sustenance-and we have squarely rejected the view that a spouse's legal fees in a divorce proceeding fall into this category….

*Tedder v. Gardner Allrich,* L.L.P., 421 S.W.3d 651, 656 (Tex. 2013).

Regarding the issues herein, the following items are also held not to be necessaries during the marriage and so cannot be within the scope of reasonable minimum needs:

1) expenses for improving or developing the wife's separate property. *Taylor v. Hustead & Tucker,* 257 S.W. 232(Tex. Comm'n. App. 1924). *See Ellis v. Emil Blum Co.,* 242 S.W. 1099(Tex. Civ. App. 1922, no writ)(although clothing suiting her station in life were necessaries, married woman's separate estate was liable for same); *Ellis v. Emil Bloom Co.,* 242 S.W. 1101(Tex. Civ. App. 1922, no writ) (same facts - while statute gives preference for widow's allowance against husband's general debts, it gives her no preference for her individual debts).

2) commissions to a broker for transaction concerning the wife's separate property. *Winkie v. Conatser,* 171 S.W. 1017 (Tex. Civ. App. Amarillo 1914, writ ref'd.).

A crucial distinction is that <u>prior to the filing of divorce</u>, 'necessaries' for a spouse (and children) might to some limited extent reflect a family's social standing, insofar as the ability of the parties permitted. *Rice v. Mercantile Bank & Trust*, 86 S.W.2d 54 (Tex. Civ. App. Dallas 1935, no writ). *See McKee v. Popular Dry Goods Co.,* 240 S.W. 567 (Tex. Civ. App. El Paso 1922, no writ). However, the definition of necessaries for the wife still excludes a college education, which is deemed a special advantage. *Woodruff v. Woodruff,* 487 S.W.2d 791, 793 (Tex. Civ. App. Texarkana 1972, no writ).

It is obvious herein that the trial court awarded Appellee the homestead residence and the Silverado truck as her property, on which the Decree also states she contractually agreed to assume the debts for each, only to turn around and disguise the note payments on each ($979 + $225/mo.) as spousal maintenance, despite the fact that Appellee already had a lake-house and 1965 Ford Mustang fastback as her separate property (CR, I:35). Inclusion of these notes was then used to bring her expenses to $2,809 (RR, IV:Exh. #2), which was multiplied by the maximum 20% to calculate maintenance, -without offsets. Forcing Appellant to duplicate items which Appellee already owns is not furnishing necessaries to her, since she has a place to stay and a way around (-i.e., shelter and transportation).

Appellee's Monthly Expense sheet (RR,IV:Exh. #2) also contains ubiquitous and overbroad categories for which no receipts were put in evidence, such as "Various Sundries," which are valued at $200/month. Still, it is never specified anywhere what

31

this is other than to imply it means a woman's toiletries, which largely are not necessaries, nor should they be so expensive for a post-menopausal woman. This item is not only excessive, but also is indicative of the gouging which has shaped this case.

Also, there is no statutory provision for re-calculation of Appellee's maintenance amount total as after-tax dollars (See RR, II:59, l. 10-p.60), to enable Appellee to receive $1625/mo. rather than $1460/month, simply because she has to pay tax on the payments as income. This, too, is excessive and is not provided for in the statutes.

Further, Texas law has changed to a "rehabilitative alimony" model because since 2011, Appellee must be diligently seeking employment to overcome the presumption against the award of maintenance. *See O'Carolan v. Hopper*, 71 S.W.3d 529, 533 (Tex.App. Austin 2002, no pet.). Yet, the court made no finding on this.The trend in many states has been to make their spousal support awards for limited periods of time, in order to foster the obligee's ability to become self-supporting, as an inducement to find work. *See Stevenson v. Stevenson*, 511 A.2d 961, 967 (R.I. 1986). But here, the court extended the support obligation to the maximum period of seven years, to end when Appellee is 72 years old. This plausibly may be more debilitative than rehabilitative.

Therefore, the maintenance awarded is a far cry from merely providing necessaries. Instead, Appellee already has the means to supply many of her basic

minimum needs, but the court puts her into a lifestyle possibly more lavish than what she had during marriage.

**ISSUE NO. VII.** THE TRIAL COURT ABUSED ITS DISCRETION BECAUSE **THE PROPERTY SETTLEMENT AGREEMENT WHICH IS INCORPORATED INTO THE FINAL DECREE IS BASED ON A RULE 11 STIPULATION MAKING IT A CONTRACTUAL TERM OF THE DECREE, WHEREBY THE DEBT ON THE PARTIES' HOUSE, TOGETHER WITH THE HOUSE ITSELF, WAS AWARDED TO APPELLEE, AND HENCE, APPELLANT CANNOT BE ORDERED TO PAY SAID MORTGAGE DEBT AS SPOUSAL MAINTENANCE, AS WAS LATER ORDERED, THUS REQUIRING REVERSAL AND REMAND.**

**ISSUE NO. VIII.** THE TRIAL COURT ABUSED ITS DISCRETION BECAUSE THE PROPERTY SETTLEMENT AGREEMENT WHICH IS INCORPORATED INTO THE FINAL DECREE IS BASED ON A RULE 11 STIPULATION MAKING IT A CONTRACTUAL TERM OF THE DECREE, WHEREBY THE DEBT ON APPELLEE'S SILVERADO TRUCK, TOGETHER WITH THE TRUCK, WAS AWARDED TO APPELLEE, AND HENCE APPELLANT CANNOT BE ORDERED TO PAY SAID DEBT AS SPOUSAL MAINTENANCE AS WAS LATER ORDERED, THUS REQUIRING REVERSAL AND REMAND.

**ISSUE NO. IX.** THE TRIAL COURT ABUSED ITS DISCRETION BY ORDERING APPELLANT TO PAY APPELLEE'S DEBTS ON THE MAURICEVILLE RESIDENCE AND THE SILVERADO, WHERE TRIAL PROOF DID NOT OVERCOME THE FAMILY CODE SECTION 8.051 REQUIREMENT THAT SEPARATE PROPERTY WOULD NOT AVAIL TO SATISFY THESE NEEDS, THEREBY REQUIRING REVERSAL.

Here, the property division was entirely stipulated to by the parties and the court held no hearings on anything but the setting of spousal maintenance for Appellee. On p. 2 of the Final Decree, under "Agreement of the Parties," it is stated:

"The Court finds that the parties have entered into an agreement for the division of their marital property and debts as contained in this decree by virtue of a Rule

33

11 Agreement duly filed with the Court on August 5, 2014, along with the testimony of the parties indicating their consent to this agreement. To the extent permitted by law, the parties stipulate the agreement is enforceable as a contract. The Court approves the property and debt division agreement of the parties as contained in this Final Decree of Divorce..." (excerpted in pertinent part from C.R., I:27)

While Appellant acknowledges that both he and Appellee were original signatories on the mortgage for the house which Appellee was awarded in the property division, which was arrived at by informal mediation at their attorney's offices before being stipulated to as contractually binding, this same property division agreement awards the entire debt for the Mauriceville house and Silverado truck to Appellee (CR, I:32-33).

Under Texas law, when a portion of a final court order is based on terms of any settlement agreement reached by the parties, the trial court has no power to supply additional terms, provisions, or conditions not previously agreed upon by the parties. *In the Interest of L.T.H., R.R.H., & A.W.H.,* 418 S.W.3d 876, 882(Tex. App. Dallas 2013**,** pet. denied), *citing McLendon v. McLendon,* 847 S.W.2d 601, 610 (Tex. App. Dallas 1992, writ denied). This rule is more fully stated (in pertinent part):

[15-18] An agreed judgment which is based on a settlement agreement must be in literal or strict compliance with the terms of the settlement agreement. *Vickrey v. American Youth Camps, Inc.,* 532 S.W.2d 292, 292 (Tex. 1976); *Arriaga v. Cavazos,* 880 S.W.2d 830, 833 (Tex. App. San Antonio 1994, no writ). A trial court has no power to supply terms, provisions or conditions not previously agreed upon by the parties. *Tinney v. Willingham,* 897 S.W.2d 543, 544 (Tex. App. Fort Worth 1995, no writ); *McLendon v. Mc Lendon,* 847 S. W. 2d 601, 610 (Tex. App. Dallas 1992, writ denied); *Dodson v. Seymour,* 664 S.W.2d 158, 161 (Tex. App. San Antonio 1983, no writ). If the terms of an agreed judgment conflict with the terms of the settlement agreement, the judgment will be unenforceable. *Clanin v. Clanin,* 918 S.W.2d 673,

678 (Tex. App. Fort Worth 1996, no writ);…A judgment based on a judicial error must be reversed and remanded to the trial court for the entry of an agreed judgment that conforms to the terms of the parties' agreement. *Clanin v. Clanin,* 918 S.W.2d at 678; *McLendon v. McLendon,* 847 S.W.2d at 610….

*Donzis v. McLaughlin,* 981 S.W.2d 58, at 63 (Tex. App. San Antonio 1998, no pet.). Accord: *In re T.B.,* 2009 WL 891882 (Tex. App. San Antonio April 3, 2009)(unpub.); *Sanchez v. Sanchez,* 2008 WL 3971274 (Tex. App. Corpus Christi 2008)(unpub.).

All similar cases are based on the rules enunciated in *Vickrey v. American Youth Camps, Inc.,* 532 S.W.2d 292 (Tex. 1976)(per curiam), which holds, in pertinent part:

…A final judgment which is founded upon a settlement agreement reached by the parties must be in strict or literal compliance with that agreement. *Wyss v. Bookman,* 235 S.W. 567 (Tex.Comm.App. 1921); *Edwards v. Gifford,* 137 Tex. 559, 155 S.W.2d 786 (1941).

The Ninth Court of Appeals itself recently ruled in an unpublished opinion:

…When a trial court renders judgment on the parties' settlement agreement, the judgment must be in strict compliance with the terms of the agreement. *Patel,* 985 S.W.2d at 252 (citing *Vickrey v. Am. Youth Camps, Inc…* 'The trial court has no power to supply terms, provisions, or conditions not previously agreed to by the parties.' *Keim,* 943 S.W.2d at 946. The trial court does have the authority to divide the community estate to the extent not set forth in the parties' settlement agreement.

*Clanin v. Clanin,* 918 S.W.2d 673, 677-78 (Tex. App. Fort Worth 1996, no writ).

However, <u>if the terms of the court's judgment conflict with the terms of the settlement agreement, the judgment is unenforceable</u>. Id. at 678. Moreover, generally, <u>a court's modifications to settlement agreements are grounds for reversal only where the modifications 'add terms, significantly alter the original terms, or undermine the intent of the parties.</u>' *Beyers v. Roberts,* 199 S.W.3d 354, 362 (Tex. App. Houston [1st Dist.] 2006, pet. denied)(citing *Keim,* 943 S.W.2d at 946).

*Pohla v. Pohla,* No. 09-09-00023-CV, 2010 WL 877555 (Tex. App. Beaumont March 11, 2010)(not desig. for publication)(emphasis added).(Because *Pobla, Id.,* was decided by the Beaumont Court, and this case originates from that District, we cite it as author- ty.) *See In re A.D.,* No. 14-12-00914-CV (Tex. App. Houston [14th Dist.] 2014), fn. 1.

The published case relied on by *Pobla, Ibid.,* is determinative that the portions of the Decree which vary or contradict the Rule 11 Stipulation herein are unenforceable:

…[13-16] A final judgment founded upon a settlement agreement must be in strict compliance with the agreement. *Vickrey v. American Youth Camps, Inc.*, 532 S.W.2d 292 (Tex. 1976); *In Matter of Marriage of Ames*, 860 S.W.2d 590, 594 (Tex. App. – Amarillo 1993, no writ); see TEX.FAM.CODE ANN. # 3.631(b). The trial court has no power to supply terms, provisions, or conditions not previously agreed to by the parties. *Matthews v. Looney,* 132 Tex. 313, 123 S.W.2d 871, 872 (1939); *McLendon v. McLendon,* 847 S.W.2d 601, 610 (Tex. App. Dallas 1992, writ denied). It can merely approve or reject the agreement. See TEX.FAM. CODE ANN. # 3.631(b)….

If an appellate court determines that the decree contains terms and provisions <u>dividing the community property that were never agreed to by the parties, it must reverse the judgment and remand the cause.</u> *Ames,* 860 S.W.2d at 594….

…[17] <u>The final decree did in fact contain terms and provisions to which the parties did not agree and which were not embodied in the Rule 11 Stipulation</u>…Such a ruling would authorize a trial court to approve an agreement while nevertheless imposing additional financial burdens upon a litigant arising from orders entered by the court during the pendency of the cause, obligations which may be so onerous as to skew the desirability of the settlement. In that context, the parties would be unable to complain on appeal that the court's judgment deviated from the terms and conditions of the settlement agreement. We conclude such a ruling would be in violation of TEX.FAM. CODE ANN. # 3.63….Accordingly, the judgment is reversed and remanded.

*Keim v. Anderson,* 943 S.W.2d 938, 946 (Tex. App. El Paso 1997, no pet.)(emphasis added). Accord:*Engineer v. Engineer*, 187 S.W.3d 625 (Tex. App. Houston [14th Dist.] 2006, no pet.); *In the Matter of the Marriage of Nolder,* 48 S.W.3d 432, 434 (Tex. App. Texarkana 2001, no pet.).

Here, the Final Decree was not in compliance with the Rule 11 Stipulation and settlement agreement which had been signed by both parties and filed before trial on August 5, 2014(CR, I:24).Opposing counsel, Mr. Carlton, even informed the court at trial "we have settled the property and the debts"(RR, II:6, l. 10). Then, in

Respondent's Exhibit #2(RR, IV:Exh. #2), Mr. Carlton introduced the debts for the house note ($879, corrected to $979/month at RR:II:16, l. 2) and "car note" on the Silverado truck ($225/mo.), both of which had been awarded to Appellee as debts in the contractual property settlement agreement, -now as "Monthly Living Expenses" (Resp. Exh. #2).

Briefly, Mr. Carlton contended that, because Appellee only received a monthly Social Security disability check of $806/month (minus $100 for insurance through Medicare) as income, the debts she had just contractually assumed, now were "minimum needs" which Appellant had to pay the notes on.

Simply because the parties had agreed that Appellee would pay all the debts on the community property she was being awarded, being the homestead and a Silverado truck, and this was stipulated to as the completed property division (without hearing), and then, in a contested hearing on spousal maintenance, at Appellee's bidding, the court found that Appellant would pay both notes on the homestead and the truck over the next 7 years as maintenance, -the Decree is unenforceable and must be reversed. Converting a debt into spousal maintenance is a change in the substantive division of the property, and also cannot be enforced under Tex. F.C. # 9.007.

*Everett v. Everett*, 421 S.W.3d 918, 921 (Tex. App. El Paso 2014, no pet.).

In our case, Appellant did not sign the Final Decree of Divorce as it was tendered by Appellee's counsel, due to the new language related to spousal support.

37

Thus, while the Rule 11 Stipulation portion of the Decree remains binding (RR, II:65, l. 9), the remainder of the Decree is not enforceable. Tex. Civ. Pract. & Rem. Code Section 154.071(a)(West 2011). *See* footnote 3 of *Koelm v. Koelm,* 2011 WL 2162879(Tex. App. Austin June 2, 2011), citing authorities which show that Tex. C.P.R.C. #154.071 controls in reading our Decree, and not statutes such as Family Code Sec. 6.602.

A. <u>Appellee already had secured her separate property which satisfied her minimum reasonable needs for transportation and housing.</u>

Appellee willingly advanced the above arguments despite the fact that she already owned "free and clear" a lake house at Toledo Bend Dam, and a classic 1965 Mustang fastback (valued at over $23,000.00). Under Tex. Fam. Code # 8.051(in pert. part):

…the court may order maintenance for either spouse <u>only if the spouse seeking maintenance will lack sufficient property, including the spouse's separate property</u>, on dissolution of the marriage to provide for the spouse's minimum reasonable needs <u>and</u>:….
(2) the spouse seeking maintenance:
(A) is unable to earn sufficient income to provide for the spouse's minimum reasonable needs because of an incapacitating physical or mental disability;

Neither of the criterion stated are dependent on one another, and maintenance may be denied solely for Appellee's failure to meet the underlined portion above. *Tomsu v. Tomsu,* 381 S.W.3d 715, 717(Tex. App. Beaumont 2012, no pet.). Here, as in *Tomsu, Id.,* at 718, Appellee had not tried to find any employment or obtain skills to do so.

But, even though the primary purpose of maintenance is to provide necessaries, or a 'subsistence,' the trial court not only re-opened the property division, and reassigned the house and car payments to Appellant, making the Decree unenforceable as to these, but also ignored the facts that Appellee had a good place to stay (valued at $45,000.00, at RR, II:31), which she owns free and clear (RR, II:31, l. 25), and has dependable transportation, a classic Mustang worth over $23,000. Because Appellee turned 65 on September 26, 2014 (RR, II:10, l. 17), does not work, and is eligible for full Social Security in addition to her disability (which she does not receive [RR, II:12, l. 22-23]), she no longer needs 2 vehicles and a big house in Mauriceville.

This re-division also means that the property division was no longer at a 50%-50% parity or equality, as Mr. Carlton repeatedly sought to establish it initially was (RR, II:22, l. 14-16; II:58, l. 22). *See Everett, supra.* Hence, Appellee cannot have her cake and eat it, too. To honor the parties' contractual settlement, which we would still like to maintain, Appellee must find another way to handle the debts which she acquired contractually in the Final Decree of Divorce (C.R., I:32-33). *See Everett, supra.*

Further, a party or her counsel cannot lead a trial court into error and then complain about it on appeal. *Keith v. Keith,* 221 S.W. 3d 156, 172 (Tex. App. Houston [1st Dist.] 2006, no pet.), *citing Texaco, Inc. v. Pennzoil, Inc.,* 729 S.W.2d 768, at 835 (Tex. App. Houston [1st Dist.] 1987, writ ref'd. n.r.e., cert. dism'd. 1988), and *Saper v.*

*Rodgers,* 418 S.W.2d 874, 877 (Tex. App. Houston [1[st] Dist.] 1967, writ ref'd. n.r.e.).

As stated in *Keith, supra,* at 172, Appellee is estopped from making argument on issues where Appellant is court-ordered to pay debts she had already contractually assumed in the Rule 11 Stipulated Agreement.

Appellant respectfully prays for reversal and remand for further re-trial of the issues appealed.

**ISSUE NO. X.** THE TRIAL COURT ABUSED ITS DISCRETION BY NOT OFFSETTING INCOME RESOURCES READILY AVAILABLE TO APPELLEE, WHERE HE IMPUTED LONG-TERM LARGE BONUSES TO APPELLANT, AND DID NOT OFFSET FACTORS LIKE APPELLANT'S HOUSING EXPENSES IN SETTING THE BASE AMOUNTS USED TO CALCULATE SPOUSAL MAINTENANCE.

**ISSUE NO. XI.** ALTERNATIVELY, IT VIOLATED ARTICLE I, SECTION 3a, OF THE TEXAS CONSTITUTION, TO IMPUTE INCOME TO APPELLANT, WITHOUT ALSO IMPUTING SOURCES OF INCOME ATTRIBUTABLE TO APPELLEE AT HER AGE OF 65 AND POST-DIVORCE, IN CALCULATING HER MINIMUM REASONABLE NEEDS.

Article I, Sec. 3a, Texas Constitution, also known as the Equal Rights Amendment, reads in its entirety:

Sec. 3a. Equality under the law shall not be denied or abridged because of sex, race, color, creed, or national origin. This amendment is self-operative.

Here, the property division was entirely stipulated to by the parties and the court held no hearings on anything but the setting of spousal maintenance (RR, II:passim). However, Appellee's 'needs' as interpreted by the trial court, include that Appellant pay a $979/month note on the parties' house (already awarded to her with the debt

thereon as part of the stipulated contractual property division which the court had no power to alter - see discussion elsewhere in this Brief), when she was also awarded her lake-house as her separate property, although no offset was accredited to Appellant for rentals Appellee should be receiving via the lake-house. Also, Appellant was not given credit for income which Appellee will receive from her first (now deceased) husband's retirement plan and pension, now that she is divorced (See RR, II:28, l. 21-p. 29, l. 15). Also, because the Mauriceville residence Appellant will now be paying the note on was a part of the property division, -when it is paid for, he should at least receive reimbursement for his note payments made post-divorce, which was pleaded for in his Amended Petition (C.R., I: 8), -not only due to the parties' contractually enforceable stipulated settlement agreement made a part of the Final Decree, but also under Article I, Sec. 3a, in part because the parties had sought to equalize the property settlement via their Rule 11 stipulated agreement (R.R., II:58, l. 22; C.R., I:29, H-4).

It is now well-established in most states which have adopted an Equal Rights Amendment (herein, E.R.A.), that spousal maintenance statutes which only provide for maintenance to be paid to the wife, but not the husband, will be invalidated. For example, *Henderson v. Henderson*, 327 A.2d 60, at 62 (Pa. 1974), states in pertinent part:

…The law will not impose different benefits or different burdens upon the members of a society based on the fact that they may be man or woman. Thus, as it is appropriate for the law where necessary to force the man to provide for the

41

needs of a dependent wife, it must also provide a remedy for the man where circumstances justify an entry of support against the wife. <u>In short, the right of support depends not upon the sex of the petitioner but rather upon need in view of the relative financial circumstances of the parties.</u>

*Henderson v. Henderson*, 327 A.2d 60, 62 (Pa. 1974).

Article I, Sec. 3a, of the Texas Constitution (Texas' E.R.A.) also requires that

'what is sauce for the goose is sauce for the gander,' and vice-versa:

…The first step in a case invoking this provision is to determine whether equality under the law has been denied. Any discrimination which occurred in the instant case is clearly "under the law" because it is required by state statute. Our next inquiry is whether equality was denied *because of* a person's membership in a protected class of sex, race, color, creed, or national origin….
…This is a gender-based distinction because only men are required to satisfy the 'best interest' test before being recognized as a parent….Therefore, we decide this case on independent state constitutional grounds….
…we conclude that the Equal Rights Amendment is more extensive and provides more specific protection than both the United States and Texas due process and equal protection guarantees….
…Our reading of the Equal Rights Amendment elevates sex to a suspect classification. Sex is clearly listed in the amendment along with other classifications afforded maximum constitutional protection.
The appropriate standard is thus one which recognizes that the Equal Rights Amendment does not yield except to compelling state interests….

*In re Unnamed Baby McLean,* 725 S.W.2d 696, 697-98 (Tex. 1987)(holding that a father seeking to legitimate his child cannot be held to a higher standard of proof). *See Henderson v. Wietzikoski,* 841 S.W.2d 101, 103(Tex. App. Waco 1992, pet. denied); *Dennis v. Smith,* 962 S.W.2d 67(Tex. App. Houston [1st Dist.] 1997, pet. denied).

As noted elsewhere herein, although income is somewhat undefined for purposes of Chapter 8's calculations of maintenance, it is obvious that the court is to rely on the comparative financial resources of the parties.

Here, for example, the court failed to take into consideration the amounts of Social Security income in addition to disability income which Appellee will receive because she turned 65 on September 26, 2014, approximately one month before judgment was entered. This information was available to the court (RR, II:10, l. 17-18).

Almost all community property states give a credit for Social Security at age 65, probably because it counts as ascertainable income, but also because receiving inordinate sums of alimony make one increasingly ineligible for some federal entitlement programs which would otherwise be available, and not be a burden to either party. The following unpublished opinion is set forth here due to the power of its reasoning:

> …Nor do we find error in the court's decision to reduce the support arrears by the amount of the benefits plaintiff would have received had she applied at age sixty-five, of his decision to reduce her alimony by that amount. As Judge Cohen clearly indicated in her October 31, 2003 order, the parties agreed that defendant was entitled to 'a dollar for dollar credit' for plaintiff's Social Security benefits, when she began receiving them at some point between ages sixty-two and sixty-five. We find it inexplicable that someone in plaintiff's financial circumstances would choose not to apply for Social Security benefits, but in any event, we infer from Judge Cohen's order that the parties agreed that plaintiff would do so. Defendant was entitled for a credit for the benefits that plaintiff received, and for those she could have received had she applied for benefits at sixty-five instead of waiting until age sixty-seven. We affirm on that point….

*Milner v. Milner*, 2014 WL 1096339 (N.J. Super. March 21, 2014). *See Easter v. Easter,* 2103 WL 53849 (Ky. App. Jan. 4, 2013)(unpub.)(after 62nd birthday maintenance to be reduced by amount of Social Security benefits to be received).

43

Texas courts also commonly hold that the failure to consider other types of offsets which are redeemable as actual income to the obligee is error. *See Fitch v. Fitch,* 2013 WL 2610143 (Tex. App Dallas June 7, 2013)(unpub.)(3-4 items justified offset against child support); *Jourdan v. Jourdan*, No. 04-10-00402-CV (Tex. App. San Antonio 2011)(not designated for publication).

Appellee is likely to argue that some of these offset issues were not properly pre served by objection. Appellant submits that is not a valid argument where the issue is obvious, and Article I, Sec. 3a, Tex. Const., is self-operative. For example, Appellee cannot live in both her city residence and her lake-house. Therefore, the rental value of the lake-house should be calculated as a financial resource to her. The same is true of her right to her late ex-husband's pension benefits, which she can now receive after divorce, a matter which was raised by Appellant at trial. (RR, II:28, l. 15-p. 29, l. 14).

**ISSUE NO. XII.** THE TRIAL COURT ABUSED ITS DISCRETION BY AWARDING $5,000.00 IN ATTORNEY'S FEES TO APPELLEE'S ATTORNEY FOR APPEALING THE AWARD OF SPOUSAL MAINTENANCE WHERE THE ISSUES ON APPEAL EITHER CONCERN ONLY, OR ARISE AS A RESULT OF, THE COURT-ORDERED SPOUSAL MAINTENANCE AWARD.

**ISSUE NO. XIII.** THE TRIAL COURT ABUSED ITS DISCRETION BY AWARDING APPELLEE ATTORNEY'S FEES FOR HER APPEAL REGARDING SPOUSAL MAINTENANCE AS A NECESSARY, WHEN ATTORNEY'S FEES CANNOT BE CLASSIFIED AS A NECESSARY IN LITIGATION UNDER THE TEXAS FAMILY CODE.

**ISSUE NO. XIV.** THE TRIAL COURT ABUSED ITS DISCRETION BECAUSE THE EVIDENCE WAS LEGALLY INSUFFICIENT TO AWARD

ATTORNEY'S FEES TO APPELLEE IN ADVANCE OF HER APPEAL AS A NECESSARY, WHERE ATTORNEY'S FEES CANNOT BE CLASSIFIED AS A NECESSARY IN LITIGATION UNDER THE TEXAS FAMILY CODE.

In its Temporary Orders issued on December 15, 2014, the trial court ordered Appellant to pay $5,000 in attorney's fees to Appellee's attorney, Steve Carlton:

"…by cash, cashier's check, or money order on or before March 1, 2015 for attorney's fees and expenses, as additional temporary spousal support."

The basis for this payment as stated in the Order reads:

"The Court finds that reasonable interim attorney's fees and expenses to be paid by JEFFERY DWAYNE BENOIT to BRENDA FAYE DRYDEN'S attorney are necessary for STEVE CARLTON to properly prepare for appeal."

Order of Judge Johnson, County Court at Law #2, on December 15, 2014 (emphasis added by underlining) (C.R., I:61).

Appellant submits that, by using this language, the trial court specifically found that the attorney's fees which were awarded for Appellee's appeal constituted a necessary for Appellee, which, from the language used, Appellee could not otherwise afford.

In *Tedder v. Gardner Allrich, L.L.P.,* 421 S.W.3d 651 (Tex. 2013), the Texas Supreme Court ruled that, in family law cases, attorney's fees may not be awarded as necessaries to one spouse even where the other spouse may have statutory liability. The Court categorically held that an award of fees as necessaries cannot occur. So,

45

with error appearing on the face of the December 15ᵗʰ Temporary Order (CR, I:61), in its award of fees as a necessary, reversal is required herein.

A similar ruling had just been handed down:

…We hold that, in the absence of express statutory authority, a trial court does not have discretion to characterize attorney's fees awarded in non-enforcement modification suits as necessaries or additional child support. Accordingly, we reverse….

*Tucker v. Thomas,* 419 S.W.3d 292 (Tex. 2013).

The reasoning of the *Tucker, Id.,* opinion indicates that there must be a Family Code statute which specifically allows the award of attorney's fees for a designated purpose, for the trial court to be able to do so. *See Tucker, Ibid*, Part B, 419 S.W.3d at 296. These new holdings coincide not only with a logical extension of the *expression unius* rule of statutory construction (discussed herein), but also with another doctrine both of which act to preclude an award of attorney's fees to Appellee in this case:

…The trial court does not have inherent authority to award attorney's fees in a divorce action. *Pletcher v. Goetz,* 9 S.W.3d 442, 447-48 (Tex. App. Fort Worth 1999, writ denied); *Chiles v. Chiles,* 779 S.W.2d 127, 129 (Tex. App. Houston [14ᵗʰ Dist.] 1989, writ denied), *overruled on other grounds by Twyman v. Twyman*, 855 S.W.2d 619 (Tex. 1993). The court is authorized to consider attorney's fees as one of many factors when making a just and right division of the marital estate….When awarding attorney's fees in a divorce action, the trial court has no authority to direct one party to expend separate property funds on the other's behalf for such fees. *Grossnickle v. Grossnickle,* 935 S.W.2d 830, 847(Tex. App. Texarkana 1996, writ denied).In this case, the trial court specifically awarded attorney's fees as sanctions, and it is apparent from the judgment and the record that the trial court did not award the attorney's fees as part of the division of the community property….

*Toles v. Toles,* 45 S.W.3d 252, 267 (Tex. App. Dallas 2001, pet. denied)(reversed for abuse of discretion on this point) (excerpted in pertinent part).

46

Although under current statutes which derive from former Texas Family Code Sec. 3.58, a trial court may award attorney's fees in a SAPCR, or to protect a property division or personal safety, none of these issues are at stake here, so attorney's fees for appellate representation are not implicated by the statute(s). *In re Garza,* 153 S.W.3d 97, 101 (Tex. App. San Antonio 2004, no pet.). *Walker v. Towslee,* 677 S.W.2d 502, 503 (Tex. 1984)(fees only for protection of property or parties). *See In re Dryden*, 52 S.W.3d 257, 264-65 (Tex. App. Corpus Christi 2001, no pet.)(no jurisdiction to modify order under stat. that only retained some jurisdiction for purpose of enforcing judgment).

A. The legislative history of Texas Family Code Section 6.709.

According to Vernon's Texas Family Code # 6.709 (West 2006), the source law from which Sec. 6.709 derives was former Tex. F.C. Sec. 3.58(h). The procedure for hearings on temporary orders to protect persons or property has always required Fourteenth Amendment, U.S. Constitution, Due Process, and an opportunity to be heard, as described below (in pertinent part):

Tex. Fam. Code Ann. # 3.58(c)(Vernon 1993), provides, in pertinent part, as follows:

After a petition for divorce or annulment or to declare a marriage void is filed, the court, on the motion of any party or the court's own motion, may make an appropriate order, including the granting of a temporary injunction, after notice and hearing, for the preservation of the property and the protection of the parties as deemed necessary and equitable, including an order directed to one or both parties:

(4) ordering payment of reasonable attorney's fees and expenses;….

47

The statute thus requires notice and a hearing before the court may award interim attorney's fees. This requirement of a hearing implies that the opposing spouse will be afforded the normal right to participate in an adversarial hearing, rather than merely the right to be present as a spectator at an ex parte hearing. *See Black v. Onion,* 694 S.W.2d 52, 55 (Tex. App. San Antonio 1985, orig. proceeding). In the present case, the trial court's refusal to allow Post to participate through cross-examination and the presentation of his own evidence amounted to a clear abuse of discretion and a violation of his due process right to be heard. *See…City of Houston v. Houston Lighting & Power Co.,* 530 S.W.2d 866, 869 (Tex. Civ. App. Houston [14th Dist.] 1975, writ ref'd. n.r.e.); *Turcotte v. Trevino,* 499 S.W.2d 705, 723 (Tex. Civ. App. Corpus Christi 1973, writ ref'd. n.r.e.);….. [collecting additional authorities]…

*Post v. Garza,* 867 S.W.2d 88, 89-90 (Tex. App. Corpus Christi 1993, no pet.).

As stated by the Texas Supreme Court in a similar case:

…It is this Court's opinion that # 3.58(c)(4) does not permit a summary order by the trial court after judgment for payment of attorney's fees. Further, # 3.58(c) provides for an order for payment of reasonable attorney's fees and expenses if, on motion of any party or on the court's own motion, the court grants a temporary injunction after notice and hearing for the preservation of property and the protection of the parties as deemed necessary and equitable. The order for payment of attorney's fees in the instant case is not in conjunction with a temporary injunction for the preservation of property and protection of the parties. Section 3.58 does not allow a party to collect 'interim' attorney's fees after the judgment of divorce is rendered….

*Walker v. Towslee,* 677 S.W.2d 502, at 503 (Tex. 1984). *See Wallace v. Briggs,* 348 S.W.2d 523, 525-526 (Tex. 1961).

There in plain English are the words of the Supreme Court stating that the trial court could not award the $5,000.00 in attorney's fees as he did, without a corresponding order of injunctive relief to protect property or personal safety.

In Texas, Temporary Orders pending appeal issued to protect either persons or property are usually in the form of injunctive or declaratory relief, and are

designed to protect the *status quo ante.* In fact, the cases excerpted above say that is the purpose of the statutes such as Tex. F.C. # 6.709 which are derived from former Tex. F.C. #3.58. Section 6.709 itself states that:

…after notice and hearing, the trial court may render a temporary order necessary for the preservation of the property and for the protection of the parties during appeal, including an order to:
(1) require the support of either spouse;
(2) require the payment of reasonable attorney's fees and expenses;….

The statute clearly indicates that the fees are related to the injunctive or other ongoing relief, as the cases indicate, and not for arguing the pending appeal. However, in our case, there was no on-going relief beyond spousal support, which requires no monitoring. Further, a trial court may not make an unconditional preliminary award of attorney's fees for arguing an appeal, and likewise may not so penalize a party for taking a successful appeal. *Keith v. Keith*, 221 S.W.3d 156, 171 (Tex. App. Houston [1st Dist.] 2006, no pet.). It is obvious therefore, that the *expressio unius est exclusion alterius* canon of statutory construction applies. Translated from Latin, these words mean that "the expression of one is the exclusion of the other," and at law, it means that, when the Legislature has used a term in one section of the statute and has excluded it in another, the court will not imply the term where it has been excluded. *Meritor Automotive, Inc. v. Ruan Leasing,* 44 S.W.3d 86, 90 (Tex. 2001). Generally, the Court will presume the Legislature had a reason for excluding it. *Smith v. Baldwin,* 611 S.W.2d 611, 616(Tex. 1980). Here, both the caption of Tex. Family Code Section 6.709(West 2006), and the provision to which the

49

subparagraphs are attached, all indicate the purpose of the subparagraphs are to implement the expressed purpose of the general provision which they modify, which is designed to provide on-going relief *pendent lite* <u>only</u>. We submit Section 6.709 cannot be read to provide fees for the argument of appeal, only fees for on-going relief to protect the status quo, and that this is expressed clearly in the structure of the statute itself.

Further, the Final Decree was signed on October 30, 2014 (CR, I:38), but the Temporary Orders were not heard and signed until December 15, 2014. Meanwhile, the court had lost its plenary jurisdiction after 30 days, other than to hold a hearing on the Motion for New Trial, to enter Findings of Fact and Conclusions of Law, or other things specifically allowed by law. The trial Judge based the award of attorney's fees solely on Tex. F.C. Sec. 6.709(RR, III:14, l. 3-5; RR, III:12, l. 4-7). Because Tex. F.C. # 6.709 only applies where temporary orders for the protection of property or people are issued, or such injunctive relief is granted, and this is not at stake here other than spousal support for Appellee, which was not the stated basis of the attorney's fees, the trial court was acting in excess of its jurisdiction.

Mr. Carlton also did not make an adequate prove-up of his attorney's fees on the record. For example, he never stated his hourly rate, or how many hours he was devoting to the appeal, if he could have known that then. Again, just as appears on Appellee's Monthly Expense Sheet (RR, IV: Respdt's Exh. #2), you saw a rubric, such as "Various Sundries," and an inflated round number. This time, Mr. Carlton

told you "Attorney's Fees" were $10,000, without itemization. The majority rule in the United States is that an award of attorney's fees for work done should not occur until the work is completed and the arguments being made by the party requesting such fees have been found to be meritorious. Otherwise, such an award is like getting the proverbial cart before the horse, and is premature.

Further, the December 15, 2014 Temporary Orders appear to be designed to discourage Appellant from pursuing his appeal. Among others, said Orders expressly assess $1,625/month as spousal support against Appellant pendent lite, and then refuses to allow such payments either to be deducted as alimony, or counted against the court's previous statutory maximum 7-year award of spousal maintenance. *See* Tex. Fam. Code Ann. # 8.054(a)(1)(B).

As to the language negating Appellant's ability to deduct support payments, because only Appellant can deduct these payments from his income tax, this seems aimed solely at hurting Appellant while he pursues his appeal. (*See* C.R., I:61.)

Appellant respectfully prays for reversal and reform of the trial court's judgment(s) as to attorney's fees awards; and, in the alternative for reversal and remand.

**ISSUE NO. XV.** THE TRIAL COURT ABUSED ITS DISCRETION BY IMPUTING A NON-RECURRENT AND UNDEPENDABLE SALARY BONUS (OR BONUSES) TO APPELLANT BEFORE CALCULATING THE AMOUNT OF SPOUSAL MAINTENANCE APPELLANT WOULD PAY ANNUALLY FOR 7 YEARS BY ASSESSING THE FULL 20% ALLOWED BY STATUTE.

Maintenance is defined in Tex. Fam. Code # 8.001(1)(West Supp. 2012). Further, the Texas Family Code mandates that the trial court may not require a spouse to pay monthly more than the lesser of $5,000, or 20% of the spouse's average monthly gross income. Tex. Fam. Code # 8.055 (2012). Some of the factors involved in determining maintenance include: each spouse's ability to provide for…minimum reasonable needs independently, considering that spouse's financial resources on dissolution of the marriage –Tex. F.C. #8.052(1); a spouse is not qualified for maintenance if (s)he is earning sufficient income to provide for these minimum reasonable needs- Tex. F.C. Sec. 8.053(a)(1);factors including the age, employment history, earning ability, and physical and emotional condition of the spouse seeking maintenance – Tex. F.C. #8.052(4); the property brought to the marriage by either spouse - Tex. F.C. #8.052(8). There are a total of eleven such factors in Texas Family Code #8.052, although the above seem to be the most germane to this appeal (emphasis added by underlining).

What "gross income" consists of for purposes of calculating maintenance is set forth in Tex. Fam. Code Sec. 8.055(a-1), of which subsection (1)(A) states as follows: (a-1) For purposes of this chapter gross income:

(1) includes:
(A) 100 percent of all wage and salary income and other compensation for personal services (including commissions, overtime pay, tips, and bonuses);….

Here, the problem arises because the trial court attributed a future late-in-the-year unaccrued bonus of $40,000.00 to Appellant during the last year (2014) used in Mr.

52

Carlton's 3-year calculated average of the basis of Appellant's earning capacity. The $40,000 figure is based on a 2013 bonus, even though the 2012 bonus was smaller. But 20% of this highball speculative average amount was then set as what Appellant must pay for the entire 7 years that maintenance runs once it starts at the end of this appeal. Appellant testified that based on his past experience with his employer, that he might never receive such bonuses, either of that size or any at all. Appellant normally earns around $65,000/year (without bonus) (RR, II:51, l. 3). As to bonuses, his company tells him there is no guarantee, either as to a bonus, or its amount, and all of it is subject to the company's profit margin (RR, II:51, l. 10-18). The employer, NGI Technical Services, L.L.C., is not a national conglomerate, and there is also no guarantee they will even be there 7 years from now.

The central issue is whether the trial court may impute a future bonus amount to Appellant as income, when Appellant may never receive such a bonus or any at all?

Part of the problem is that, other than the highly consistory listing of what constitutes "gross income" given by Tex. F.C. # 8.055(a-1), "income" itself is not defined very thoroughly in Chapter 8 of the Texas Family Code. "Income" is defined in the Uniform Interstate Family Support Act to include "earnings or other periodic entitlements to money from any source and any other property subject to withholding for support under the law of this state." Tex. Fam. Code # 159.102(5) (West 2014). Other than this definition used in enforcement matters, the rules of

53

statutory construction appear to give the word "income" its ordinary meaning for Chap. 8 purposes. Tex. Gov't. Code Sections 312.002(a), 311.011(a)(West 2013);*FKM Partnership, Ltd., v. Bd. of Regents,* 255 S.W.3d 619, 633 (Tex. 2008)(absent definition or technical meaning, words are construed according to plain meaning, unless absurdity results).

Both Webster's dictionaries define "income" as a <u>recurrent</u> benefit: "a gain or recurrent benefit usually measured in money that derives from capital or labor; also, the amount of such gain received in a period of time." MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 630 (11th ed. 2003);"a gain or recurrent benefit that…derives from capital, labor, or a combination of both." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1143 (1981). Thus, to be income for purposes of calculating spousal maintenance, a bonus would have to be a recurrent benefit, or as stated in Tex. F.C. Sec. 159.102(5)(West 2014)(above), an "entitlement," rather than a mere possibility.

Generally, if an undefined word is determined to have a specific ordinary or legal meaning, in the absence of legislative intent to the contrary, the word is presumed to have the same meaning throughout the Act. *Paddock v. Siemoneit,* 218 S.W.2d 428, 432 (Tex. 1949*); Southwest Properties, L.L.P. v. Lite-Dec of Texas,* 989 S.W.2d 69, 71 (Tex. App. San Antonio 1998, pet. denied).

Here, in order to obtain the $8,122.75 monthly gross income for Appellant which the trial court lists in Finding of Fact #10 (C.R., I:58), the Court averaged

Appellant's previous 2 years' income, and imputed a $40,000.00 bonus to Appellant for 2014, which Appellant had not received yet (any bonus he receives, which always vary in amount, are toward the end of the year, if they occur), and which, as Appellant stated, he may never receive again. (RR, II:51)  Thus, the court averaged 3 years income, including adding in an uncertain, but possible bonus for the last year of 2014. In other words, the 2014 $40,000 bonus averaged into his income calculation, is not actual income, and historically, his bonus is not dependable, and may be non-recurrent in any form. The Texas Family Code should limit the setting of alimony for 7 years to predictable income. Due to the lack of Texas law on point, please see this New Jersey case reviewing inclusion of a bonus taken from a 2005 Order to set alimony in 2007:

…Here, the court imputed income to both parties, utilizing the amounts on which the parties based the obligation set forth in the final judgment. That amount may be reasonable and fair, however, in the absence of any proofs indicating that defendant has the ability to earn the imputed amount, we cannot properly evaluate the reasonableness or the fairness of the imputation.  Even if it was not unforeseeable at the time of the divorce that defendant might not be able to match his former salary, that should not bind him interminably to the amount stipulated in the divorce decree in good faith, if changed circumstances can be shown….As we have observed, '[u]nderpinning the basis of every support order is the proposition the payor has the 'ability to pay' the amount set forth or agreed to.' …

We are not satisfied from our review of the record that the court made the requisite factual finding that defendant has the actual capacity to earn the income imputed to him. Accordingly, we remand for further proceedings….

*Casole v. Casole*,  No. A-4654-06T2(Superior Ct. of New Jersey, App. Div'n., March 31, 2008) (per curiam).

Many states also refuse to base support calculations on anticipated, but uncertain, pay increases due to overtime or odd jobs that are not shown to be dependable. *See Cole v. Cole*, 384 N.W.2d 312, 316 (S.D. 1986). How much more uncertain and tangential is an end-of-year bonus which might occur, but has no set criteria?

It should also be noted that the parties' property agreement was for Appellee to receive the homestead estate, as well as her separate property lake-house, which was the bulk of the parties' landed estate. In most states, the maximum percentage which can be awarded as maintenance is based on the total value of both estate and income, in order to be just and reasonable. Here, no values are imputed to Appellee's awarded separate and community property estate in setting spousal maintenance.

There must be more than mere guesswork about the receipt of income used to calculate maintenance. Otherwise, courts are granting wish-fulfillment, and if wishes are to become horses, then beggars will ride.

A wage withholding order will be used to enforce payment of the $1,625/month in maintenance (RR, III:15, l.9). In order to be equitable, such an Order should contain a step-down clause which would take effect the year that Appellant does not receive a bonus, or receives a diminished one. Likewise, the $1,625/month amount should step down by $225.00/month when Appellee's car note on her Silverado truck is paid off about 2 years from now, if Appellee is upheld

on appeal on that portion of the spousal maintenance award. If one goes by what the court purportedly intended by fixing maintenance at this level for 7 years, step-downs would prevent Appellant from being gouged.  Appellant respectfully prays that this case be reversed and remanded for further hearings or trial.

## CONCLUSION AND PRAYER

For the above and foregoing reasons, Appellant respectfully prays that the Court of Appeals reverse and render, or reform, the trial court's Judgment(s) where the issues are decided on the merits of applicable law, and alternatively, to reverse and remand where necessary.  Because the trial court is a County Court at Law, Appellant would request that the Court of Appeals consider instructions or other recommendations on remand, if deemed appropriate. Appellant prays for general relief, and that court costs be awarded against the unsuccessful party.

Respectfully submitted,

*/s/  Jack  Lawrence*
JACK LAWRENCE
ATTORNEY FOR APPELLANT
5570  WINFREE
BEAUMONT, TEXAS77705
(409) 833-0894 office
(409) 835-4567 fax
SBOT #12043800
hirelaw@sbcglobal.net

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the above and foregoing Appellant's Amended Brief has been delivered to counsel for Appellee, Jamie D. Matuska via electronic filing service, on May 7, 2015, in accordance with the applicable rules of procedure.

/s/ Jack Lawrence
JACK LAWRENCE
SBN #12043800

## CERTIFICATE OF COMPLIANCE

I do hereby certify that the above and foregoing Appellant's Amended Brief in *Jeffery Dwayne Benoit v. Brenda Faye Benoit,* contains 11,857 words beginning the count at the first page of the Summary of Argument and ending the count above the signature block on page 57, but not including certificates such as certificates of service.

The Statement of Facts contains 226 words, bringing the total for purposes of the Texas Rules of Appellate Procedure to 12,083 words contained in the Brief.

Any other pages are not here counted for these purposes. This Certificate is made pursuant to Rules 9.4(i), Texas Rules of Appellate Procedure.

*/s/ Jack Lawrence*
JACK  LAWRENCE
SBN #12043800